UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN GILES #949938,

        Petitioner,                            Hon. Gordon J. Quist

v.                                           Case No. 1:19-CV-187

GREGORY SKIPPER,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Giles' petition for writ of habeas corpus.   In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Giles' petition be denied.

## BACKGROUND

As a result of events that allegedly occurred between 2003 and 2005, Petitioner was charged with six counts of criminal sexual conduct involving a victim less than thirteen years of age.   Several individuals testified at Petitioner's jury trial.   The relevant portions of their testimony are summarized below.

1

**Destiny Thomas**

When Thomas was approximately six years old, Petitioner began a relationship with her mother, Kristal Giles.   (ECF No. 4-7, PageID.498, Trial Transcript, January 21, 2015, at 13-14).   Petitioner later moved in with Thomas and her family.   (*Id.*).   When Thomas was eight years old, Petitioner sexually assaulted her.   (*Id.*, PageID.513-15).   Thomas reported this to her mother who stated that "she was going to handle it."   (*Id.*, PageID.531-23).   The following morning, Thomas' mother questioned Petitioner about Thomas' allegations.   (*Id.*, PageID.532-33).   Petitioner admitted sexually assaulting Thomas, but promised that it would not happen again. (*Id.*, PageID.533).

Less than two weeks later, however, Petitioner again sexually assaulted Thomas and repeatedly did so over a prolonged period.   (*Id.*, PageID.534-49). Thomas informed her mother on numerous occasions that she was being assaulted, but still "it continued."   (*Id.*, PageID.548-49).   Thomas also informed her older brother that she was being sexually assaulted by Petitioner, but he did not believe her.   (*Id.*, PageID.549).

When Thomas was nine years old, she and her family, including Petitioner, moved to Pennsylvania.   (*Id.*, PageID.551).   While living in Pennsylvania, Petitioner continued to sexually assault Thomas.   (*Id.*, PageID.551-54).   Thomas reported this to her mother who assured her that "she was going to handle it."   (*Id.*, PageID.554).   Petitioner did not, however, stop sexually assaulting Thomas.   (*Id.*).

When Thomas was twelve years old, she and her family, including Petitioner, moved to St. Louis. (*Id.*, PageID.555-58). Petitioner continued to sexually assault Thomas. (*Id.*, PageID.559). When Thomas was fifteen years old, she and her family, including Petitioner, moved to Alabama. (*Id.*, PageID.560). While living in Alabama, Thomas became pregnant with Petitioner's child. (*Id.*, PageID.560-61).

**Charles Thomas**

Charles Thomas is Destiny Thomas' older brother. (ECF No. 4-7, PageID.498, Trial Transcript, January 21, 2015, at 12, 96-98). Over the years, Charles began to have concerns about Petitioner's relationship with Destiny. (*Id.*, PageID.595-605). Eventually, Charles confronted Petitioner who acknowledged that he was "sleeping with" Destiny. (*Id.*, PageID.605-06).

**Charmane Coleman**

Coleman is Destiny Thomas' maternal grandmother. (ECF No. 4-7, PageID.498, Trial Transcript, January 21, 2015, at 121-22). After Petitioner moved in with Kristal Giles, Petitioner denied Coleman contact with her grandchildren. (*Id.*, PageID.620-21).

**Kristal Giles**

Giles met Petitioner in 2001 and the pair married in 2003. (ECF No. 4-7, PageID.498, Trial Transcript, January 21, 2015, at 133-35). Giles denied that Destiny Thomas ever reported that Petitioner was sexually assaulting her. (*Id.* PageID.632-35, 640). Giles also never observed any behavior between Petitioner and

3

Destiny that caused her to suspect Petitioner was sexually assaulting her daughter. (*Id.*, PageID.635-38).   Giles asserted that Destiny "could be at times not honest at all."   (*Id.*, PageID.640-41).   Giles acknowledged, however, that after several years of marriage, Petitioner began having sex with a seventeen-year old girl who lived with Giles and her family.   (*Id.*, PageID.642-43).

With respect to Destiny's subsequent pregnancy, Giles indicated that she was "still not certain" that Petitioner was the child's father.   (*Id.*, PageID.638-39).   Giles was aware that Petitioner had submitted to a DNA test to determine if he was the father of Destiny's child.   (*Id.*, PageID.651-52).   Giles asserted, however, that she was "not aware" of the results.   (*Id.*, PageID.652-53).   Giles further stated that, even if a DNA test demonstrated that Petitioner fathered Destiny's child, she still did not believe that Petitioner sexually assaulted Destiny when she was younger.   (*Id.*, PageID.653-54).   Destiny gave birth to her child "at home" and was never examined by a medical professional during her pregnancy, but Giles denied that such was motivated by concern that "the authorities" might ask who had impregnated a fifteen-year old girl.   (*Id.*, PageID.659).

**Catherine Maggert**

Maggert testified that she was employed as a forensic scientist with the Michigan State Police Crime Lab.   (ECF No. 4-7, PageID.498, Trial Transcript, January 22, 2015, at 3-4).   Maggert testified that a DNA test revealed that "given the genetic makeup of the child and the father it's 17.16 billion times more likely that

[Petitioner] is the father [of Destiny Thomas' child] than somebody else."  (*Id.* PageID.505-15).

Following the presentation of evidence, the jury found Petitioner guilty of five counts of first degree criminal sexual conduct and one count of second degree criminal sexual conduct.  (ECF No.4-8, PageID.738-42).  Petitioner was sentenced to serve concurrent sentences of 240 to 720 months on the first-degree criminal sexual conduct convictions and 120 to 180 months on the second-degree criminal sexual conduct conviction.  (ECF No. 4-9, PageID.745, Sentencing Transcript, February 4, 2015, at 10).

Petitioner appealed his convictions in the Michigan Court of Appeals asserting the following claims:

I.   The trial court denied defendant a fair trial and violated due process by erroneously admitting irrelevant and prejudicial bad acts evidence.

II.   The defendant's due process rights were violated when he was convicted of first-degree and second-degree criminal sexual conduct without sufficient evidence to prove those offenses beyond a reasonable doubt.

III.   Repeated instances of prosecutorial misconduct violated Defendant's right to a fair trial.

IV.   This matter should be remanded for the consideration of newly discovered evidence.

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Giles*, 2016 WL 3542397 (Mich. Ct. App., June 28, 2016).  Raising issues I-III, Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal. *People v. Giles*, 888 N.W.2d 926 (Mich. 2017).

5

On September 11, 2017, Petitioner filed in the trial court a motion for relief from judgment in which he asserted the following claims:

I.      The defendant's right to effective assistance of counsel at trial was violated when counsel failed to investigate and study the exculpatory records or introduce into evidence for impeachment purposes a video transcription of the complainant's prior inconsistent statements that raised sufficient doubt as to guilt to undermine confidence in the verdict.

II.     Defendant's constitutional rights were substantially violated when the government suppressed exculpatory impeachment evidence recently discovered i.e. (transcribed) and this Brady violation materially impacted the fairness of his trial.

III.    The defendant's claims adequately set forth grounds for cause and prejudice for failing to raise these claims on direct appeal.

IV.     The defendant is entitled to an evidentiary hearing on these matters.

The trial court denied Petitioner's motion for relief from judgment.   (ECF No. 4-13, PageID.1134-36).   Asserting claims I-II, as well as an additional claim of ineffective assistance of appellate counsel, Petitioner appealed this decision to the Michigan Court of Appeals and the Michigan Supreme Court, both of which denied relief.   (ECF No. 4-14, PageID.1137; ECF No. 4-15, PageID.1276).   Petitioner subsequently initiated the present action in which he asserts the following claims:

I.      Brady violation – the prosecution violated Petitioner's due process, Fourteenth Amendment rights when it suppressed exculpatory evidence material to his guilt.

II.     Ineffective assistance of trial counsel – failure to investigate and present exculpatory evidence.

III.    Ineffective assistance of appellate counsel.

6

## STANDARD OF REVIEW

Giles' petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.   The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ─

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."   *Bell v. Cone*, 535 U.S. 685, 693 (2002). As the Supreme Court recently emphasized, this standard is "intentionally difficult to meet."   *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (internal quotation omitted).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result."   *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting

*Williams v. Taylor*, 529 U.S. 362, 405 (2000)).   A writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411.   Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable.   *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12.

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary."   *Ayers*, 623 F.3d at 308.   Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."   *Ibid.*

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy either subsection therein.   This requirement, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"   *Harrington v. Richter*, 562 U.S. 86, 100 (2011).   Instead, if a state court rejects a federal claim, a federal habeas court "*must presume* that the federal claim was adjudicated on the merits."   *Johnson v. Williams*, 568 U.S.

289, 301 (2013).  If this presumption is overcome, however, the Court reviews the matter de novo.  *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

## ANALYSIS

### I.    Procedural Default

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address a petitioner's claims because of a failure to satisfy state procedural requirements.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  Where a petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground generally precluding review by a federal court.  *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).   If a claim has been procedurally defaulted, federal habeas review is available only if the petitioner can establish either (1) the existence of cause for his default and actual prejudice resulting therefrom, or (2) that the failure to consider the merits of the claim will result in a fundamental miscarriage of justice.   *See Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004) (citing *Coleman*, 501 U.S. at 750).

Respondent argues that Petitioner has procedurally defaulted his claims of ineffective assistance of trial counsel.  The Court, however, is not obligated to address Respondent's procedural default arguments and can instead simply decide Giles' petition on the merits.  *See, e.g., Lambrix v. Singletary*, 520 U.S. 518, 525

9

(1997) (recognizing that "judicial economy" may justify addressing a habeas petition on the merits rather than addressing complicated procedural default questions).

Rather than attempt to navigate potentially difficult questions of procedural default law, for which there may not be clear answers, and potentially waste scarce judicial resources should the Court's analysis of such later be found in error, the Court opts to simply address Petitioner's claims on the merits.   *See, e.g., McLemore v. Bell*, 503 Fed. Appx. 398, 404 (6th Cir., Oct. 31, 2012) (observing that when facing "the analytical morass in which procedural-default rules ensnare us," "[a]n analysis of the merits of the petitioner's substantive claims presents a more straightforward ground for decision").   The Court finds that Respondent is not prejudiced by such because even addressed on the merits, Petitioner's claims do not entitle him to relief.

## II.    **Brady Claim**

Petitioner argues that he is entitled to relief because the prosecution failed to timely disclose certain evidence relevant to impeach Destiny Thomas.   Specifically, Petitioner argues that the prosecution failed to disclose the following items: (1) a September 1, 2010, Request for Emergency Protective Custody; (2) the transcript of a September 16, 2010, interview of Destiny Thomas; and (3) a December 4, 2015, sworn statement by Destiny Thomas.

The suppression by the prosecution of evidence favorable to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."   *Wilson v. Mitchell*, 498

F.3d 491, 512 (6th Cir. 2007) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).
The material that must be disclosed under *Brady* "encompasses impeachment
evidence as well as exculpatory evidence." *Wilson*, 498 F.3d at 512 (citing *United
States v. Bagley*, 473 U.S. 667, 676 (1985)). To prevail on this claim, Petitioner must
establish: (1) the prosecution suppressed or withheld evidence, (2) the evidence was
favorable to the defense, and (3) the suppressed evidence was material. *See United
States v. Dado*, 759 F.3d 550, 559-60 (6th Cir. 2014).

The materiality requirement is not a sufficiency of the evidence test. *See In
re McDonald*, 514 F.3d 539, 545-46 (6th Cir. 2008) (quoting *Kyles v. Whitley*, 514 U.S.
419, 434-35 (1995)). In other words, Petitioner is not required to demonstrate that
consideration of the undisclosed evidence results in less than sufficient evidence to
support his conviction. This is because "the possibility of an acquittal of a criminal
charge does not imply an insufficient evidentiary basis to convict." *In re McDonald*,
514 F.3d at 546 (quoting *Whitley*, 514 U.S. at 434-35). Also, the withheld evidence
must be considered "collectively, not item by item." *Whitley*, 514 U.S. at 436-37.
The materiality requirement is satisfied where "the favorable evidence could
reasonably be taken to put the whole case in such a different light as to undermine
confidence in the verdict." *Banks v. Dretke*, 540 U.S. 668, 698 (2004). In short,
Petitioner must demonstrate a "reasonable probability of a different result." *Dretke*,
540 U.S. at 698.

11

A.      September 1, 2010, Request for Emergency Protective Custody

On September 1, 2010, a Request for Emergency Protective Custody was filed in a St. Louis, Missouri family court.   (ECF No. 4-10, PageID.893-99).   According to this report, Destiny Thomas was taken into protective custody because she and her family were living in an abandoned building without indoor plumbing.   As part the investigation this action prompted, officials spoke with Petitioner and Kristal Giles, both of whom refused requests to inspect their residence to ensure that their children were being properly cared for.   It was also reported that Petitioner "watches internet porn" and has sex with Destiny Thomas and "some girl" who lived with Petitioner and Kristal Giles.

B.      September 16, 2010, Forensic Interview

As part of the investigation referenced above, Destiny Thomas participated in an interview.   Petitioner has submitted what he purports is a transcript of this interview.   (ECF No. 1-1, PageID.53-78).   This purported transcription is not properly authenticated, however.   Nevertheless, the Court will assume that Petitioner's submission is accurate.

Destiny Thomas made clear in this interview that she did not want to be placed in foster care.   Toward that end, Thomas asserted that the allegations that prompted the filing of the Request for Emergency Protective Custody were mistaken and misunderstood.   Presumably because the interviewer did not want to influence Thomas' responses, the interviewer did not directly confront Thomas about the

12

reports that she was being sexually assaulted by Petitioner.  At one point in the interview, however, Thomas did raise the topic of "child abuse," stating that "there's no child abuse with my mother or my father."  Thomas also stated that she loved Petitioner and considered him her biological father.

Petitioner's argument that Thomas' statements during this interview directly contradict her trial testimony is not persuasive.  That Thomas chose during this interview not to volunteer that she was being sexually assaulted by Petitioner simply does not equate to having denied such in response to direct questioning.  While Petitioner may have been able to use this material to impeach Thomas at trial, any impact of such would undoubtedly have been lessened by pointing out that Thomas was never directly asked if Petitioner sexually assaulted her.

C.    December 4, 2015, Sworn Statement

After being convicted in Michigan of the charges described herein, Petitioner was charged in Missouri with statutory rape.  (ECF No. 1-2, PageID.158).  As part of this prosecution, Destiny Thomas participated in a sworn deposition.  (ECF No. 1-1, PageID.92-140).  In this deposition, Thomas testified that Petitioner sexually assaulted her over the course of several years beginning when she 8 years old.

Petitioner's claim that his right to a fair trial was violated by the prosecution's failure to provide this evidence fails.  First, Petitioner has failed to demonstrate that the material in question was not timely provided.  More importantly, however, even if the Court assumes that the material was suppressed and favorable to Petitioner's

defense, Petitioner cannot demonstrate that such was material or that its suppression undermines confidence in the jury's verdict.

The Court fails to discern how use of this material would have enabled Petitioner to undermine Destiny Thomas' credibility.   Moreover, even it is assumed that such is the case, such does not diminish the other evidence of Petitioner's guilt, including the testimony of Thomas' brother that Petitioner admitted "sleeping with" Destiny Thomas or the unrefuted fact that Petitioner is the father of the child Thomas conceived when she was only fifteen years old.   In sum, Petitioner's *Brady* claims are wholly without merit and present no issue on which habeas relief may be granted.

## III.  Ineffective Assistance of Trial Counsel

The record in this matter reveals that Destiny Thomas grew up amidst dysfunction, abuse, and neglect.   Not surprisingly, the record is also replete with documentary evidence of Thomas' many contacts with law enforcement, child protective services, and other social service entities and agencies.   Petitioner asserts that his trial counsel rendered ineffective assistance by failing to discover and utilize at trial certain reports documenting such contact.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom.   *See Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).   To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."   *Premo*, 562 U.S.

14

at 121 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).    A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance."    *Premo*, 562 U.S. at 121 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 562 U.S. at 121-22 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance.    Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Premo*, 562 U.S. at 122 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).    The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."    *Premo*, 562 U.S. at 122 (quoting *Strickland*, 466 U.S. at 690).    This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory."    *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one."    *Premo*, 562 U.S. at 122.    Likewise, the

15

standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential.  *Ibid.* (citations omitted).   As the *Premo* Court concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial.   Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 122-23 (internal citations omitted).

Petitioner argues that his attorney should have discovered and utilized at trial the following items: (1) a February 24, 2014, interview of Destiny Thomas; (2) a March 4, 2013, warrant request; (3) a July 2005 incident in which Thomas falsely accused a boy of rape; and (4) reports concerning a 2003 allegation that Destiny Thomas was sexually assaulted by her biological father.   (ECF No. 1, PageID.21-25).

A.    February 24, 2014, interview of Destiny Thomas

The material cited by Petitioner is a brief notation contained in a Case Management Tracking report completed by the St. Louis Metropolitan Police Department.   (ECF No. 1, PageID.22, 80).   This note, dated February 24, 2014, indicates that Thomas "disclosed being abused in St. Louis City as well, however, a preliminary investigation revealed [Thomas] denied being abused at a CAC years prior."   (ECF No. 1, PageID.80).

16

Contrary to Petitioner's argument, the statement that Thomas "denied being abused at a CAC years prior" does not establish that Destiny Thomas testified untruthfully at trial.   First, this statement is reasonably susceptible of two interpretations: (1) Thomas, while at a CAC, denied being subject to any abuse, or (2) Thomas denied being abused at a CAC.   The Court fails to discern how either interpretation advances Petitioner's cause.   As for the former interpretation, that Thomas allegedly denied, at one point in time, being sexually assaulted does not rule out that she was sexually assaulted at a later point in time as she testified.   As for the latter interpretation, that Thomas denied being sexually assaulted at a CAC does not rule out that Thomas was assaulted in Petitioner's home as she testified.

B.     March 4, 2013, Warrant Request

Petitioner next faults his attorney for failing to review a March 4, 2013, Warrant Request completed by a Detective employed by the Highland Park Police Department.   (ECF No. 1 , PageID.22-23, 178-83).   Specifically, Petitioner argues that review of this material would have informed his attorney that Destiny Thomas resided in a juvenile detention facility in 2009 and lived in a group home in 2010. While this report indicates that Thomas "was placed in foster care [in 2010] for being a runaway," given the repeated instances of abuse described in the remainder of this report such is hardly surprising.   Specifically, this report describes the horrific physical and sexual abuse inflicted on Thomas by Petitioner.

17

C.     July 2005 False Rape Incident

Petitioner argues that an incident in July 2005 demonstrates that Destiny Thomas once falsely accused a "neighborhood boy" of rape.   (ECF No. 1, PageID.24, 290-98).   A review of the report in question reveals that, in July 2005, the Family Independence Agency (FIA) investigated "allegations of mental injury, failure to protect, [and] improper supervision" made against Petitioner and Kristal Giles. (ECF No. 1, PageID.291).   As part of this investigation, Destiny Thomas reported that she was confronted by a neighborhood boy who exposed himself and told her to "suck his dick."   (ECF No. 1, PageID.291).   Thomas' assertion was substantiated by two of her brothers.   (ECF No. 1, PageID.292).

The FIA investigator ultimately "denied" the complaint due to a lack of evidence to support the allegations.   (ECF No. 1, PageID.292).   Petitioner asserts that this demonstrates that Thomas falsely accused a boy of rape.   A review of the report, however, indicates that it was the "allegations of mental injury, failure to protect, [and] improper supervision" that were denied.   There is no indication that the investigator made any conclusions regarding the incident Thomas described.

D.     Allegations Against Destiny Thomas' Biological Father

Finally, Petitioner cites to a 2003 incident in which Destiny Thomas alleged that her biological father had sexually assaulted her.   (ECF No. 1, PageID.24-25, 162-76).   The reports to which Petitioner cites reveal the following.   In early 2003, the FIA investigated a report that Destiny Thomas' biological father was sexually

18

abusing Thomas' sister.  (ECF No. 1, PageID.162-65).   During this investigation
Destiny Thomas reported that her father sexually assaulted her.  (ECF No. 1,
PageID.163).   While the Court certainly cannot declare that this information was not
relevant to Petitioner's defense, it is hardly the smoking gun that Petitioner alleges.

The fact that Destiny Thomas may have been sexually assaulted by one man
in 2003 does not preclude that she was sexually assaulted by Petitioner in the years
thereafter.   Moreover, absent evidence that Thomas' allegations against her
biological father were false, something Petitioner has not demonstrated, it is unclear
how knowledge of this information would have advanced Petitioner's cause.

In sum, with respect to the material in question, Petitioner has failed to
establish that his attorney did not, in fact, review such prior to trial and decided, for
reasonable strategic reasons, not to question Thomas regarding such.   Thus,
Petitioner cannot establish that his attorney was deficient.   Furthermore, even if the
Court assumes that counsel was deficient for failing to review this material prior to
trial, Petitioner cannot establish the requisite prejudice.   The Court is not persuaded
that Destiny Thomas could have been impeached in any meaningful way by use of
the material at issue.   Furthermore, the other evidence against Petitioner was
overwhelming.

The trial court denied Plaintiff's ineffective assistance of trial counsel claims.
(ECF No. 4-13, PageID.1134-36).   This determination is neither contrary to, nor
involves an unreasonable application of, clearly established federal law.

Furthermore, the court's decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim presents no basis for habeas relief.

## IV.    Ineffective Assistance of Appellate Counsel

Petitioner asserts that he is entitled to relief on the ground that his right to the effective assistance of appellate counsel was denied.  Specifically, Petitioner asserts that his appellate counsel should have asserted on appeal the issues discussed in sections II and III above.  (ECF No. 4-14, PageID.1169-74).  As detailed herein, however, the claims that Petitioner argues should have been asserted by his appellate counsel utterly lack merit.  Because these claims all lack merit, Petitioner cannot demonstrate that he suffered prejudice as a result of counsel's allegedly deficient performance.  Accordingly, this claim raises no issue on which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the undersigned recommends that Giles' petition for writ of habeas corpus be denied.   The undersigned further recommends that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000); *Miller-El*, 537 U.S. at 336.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:   February 27, 2020

   /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

21