UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN PATRICK GILES,

    Petitioner,

v.                                                                                          Case No. 1:19-CV-187

GREGORY SKIPPER,                                                        HON. GORDON J. QUIST

    Respondent.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING HABEAS PETITION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. United States Magistrate Judge Phillip J. Green issued a Report and Recommendation (R & R), recommending that the habeas petition be denied. (ECF No. 6) Petitioner, Bryan Patrick Giles, has filed objections. (ECF Nos. 9 and 10.) Upon receiving objections to a report and recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This Court may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. *Id.*; Fed. R. Civ. P. 72(b). After conducting a *de novo* review of the R & R, the objections, and the pertinent portions of the record, the Court (1) approves and adopts the R & R, as supplemented by this Order, (2) denies the habeas petition, and (3) denies a certificate of appealability.

### *Brady* Claim

Giles first objects to the magistrate judge's determination that Giles' *Brady* claim was based on the prosecutor's suppression of three particular pieces of evidence. (Pet'r's Obj., ECF

No. 9, PageID.1543–1546.) Giles insists the claim is based on only one item: the September 16, 2010, forensic interview. To the extent it could be argued that Giles' *Brady* claim extended beyond the September 16, 2010, interview, the Court will consider any such claim abandoned. The magistrate judge's liberal construction of Giles' submissions as raising a broader *Brady* claim than Giles actually intended to raise, however, did not prejudice Giles.

Giles' second objection to the magistrate judge's resolution of the *Brady* claim, (*Id*., PageID.1546–1547), is misdirected. He attacks the following statement:

> The Court fails to discern how use of this material would have enabled Giles to undermine [the victim's] credibility.

(R & R, ECF No. 6, PageID.1532.) That statement, however, relates to the magistrate judge's assessment of the *Brady* claim based on the December 4, 2015, sworn statement of the victim—an item of evidence that Giles now claims is not part of his *Brady* claim. Giles' first objection, therefore, moots his second objection.

Giles' third objection relating to the *Brady* claim is that the magistrate judge misconstrued the record. (Pet'r's Obj., ECF No. 9, PageID.1547–1550.) The magistrate judge wrote that the victim's brother testified that Giles acknowledged he was sleeping with the victim. (R & R, ECF No. 6, PageID.1521, 1532.) Giles recounts at some length the testimony of the brother, and posits that the brother only testified that Giles admitted sleeping with "another girl." (Trial Tr. II, ECF No. 4-7, PageID.605–606; Pet'r's Obj., ECF No. 9, PageID.1547.) The transcript includes the following exchange:

> Prosecutor: And what if anything did Bryan say about his relationship with [the victim]?
>
> Witness: He openly admitted to molesting and sleeping with another girl I'm not sure where she came from.

(Trial Tr. II, ECF No. 4-7, PageID.605–606.)

Giles contends that the exchange has only one possible meaning: Giles admitted to sleeping with "another girl" meaning a girl other than the victim.  Accepting that premise, Giles claims further that the magistrate judge's determination that Giles admitted sleeping with the victim is unreasonable on this record.  Giles' argument, however, depends entirely on reading just that portion of the brother's testimony.  Reading the brother's testimony in its entirety makes clear that during Giles' *mea culpa*, he used the terms "sleeping with" "about [the victim]."  (*Id*., PageID.606.)  The brother emphasized again, on cross-examination, that Giles' admissions "had . . . to do with [the victim]."  (*Id*., PageID.617.)  The magistrate judge's factual determination regarding the nature of the brother's testimony is well-supported by the record.

Giles next objects to the magistrate judge's characterization that the evidence against Giles was overwhelming.  (Pet'r's Obj., ECF No. 9, PageID.1550–1554.)  The crux of Giles' argument is that the victim is telling the truth about Giles sexually assaulting her at the time he impregnated her, but she is lying about the other sexual assaults, particularly the sexual assaults that occurred during the time they resided in Michigan.[1]  Certainly, if one concludes that the victim is lying about every sexual assault but the one that is conclusively proven by DNA evidence, the evidence might not seem overwhelming.  But, if one looks at the victim's statement to her brother while they were in Michigan about Giles inappropriately touching her, Giles' admissions while they were in St. Louis, and the DNA evidence, one might also very reasonably conclude that the victim is not lying about the sexual abuse.  Given that reasonable conclusion, it is difficult to describe the evidence against Giles as anything but overwhelming.  The magistrate judge's characterization of the evidence is, therefore, well-supported by the record.

---

[1] As Giles characterizes the evidence, "[r]emove [the victim's] testimony and you have no evidence from any other witness showing that Giles assaulted [the victim] between 2003 and 2005."  (Pet'r's Obj., ECF No. 9, PageID.1572–1573.)

Giles' next objection relates to the magistrate judge's determination that the 2010 forensic interview statements were not exculpatory, material, or prejudicial. (*Id.*, PageID.1554–1556.) Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948-49 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985).

During the forensic interview, the victim stated:

> I went to this little meeting, and they're talking about something about child abuse. I don't know what they're talking about, but there's no child abuse with my mother or my father. I had . . . that has nothing to do with the situation.

(Interview Tr., ECF No. 4-14, PageID.1209.) The magistrate judge determined:

> [T]he interviewer did not directly confront [the victim] about the reports that she was being sexually assaulted by Giles. At one point in the interview, however, [the victim] did raise the topic of "child abuse," stating that "there's no child abuse with my mother or my father." . . . Giles argument that [the victim's] statements during this interview directly contradict her trial testimony is not persuasive. That [the victim] chose during this interview not to volunteer that she was being sexually assaulted by Giles simply does not equate to having denied such in response to direct questioning. While Giles may have been able to use this material to impeach [the victim] at trial, any impact of such would undoubtedly have been lessened by pointing out that [the victim] was never directly asked if Giles sexually assaulted her.

4

(R & R, ECF No. 6, PageID.1530–1531.)

Giles contends that the magistrate's statement that "Giles may have been able to use this material to impeach [the victim] at trial[,]" establishes the evidence as favorable and material. That is an overreach. Viewed in isolation the victim's statement could certainly be considered favorable to Giles; favorability "is a relatively low threshold for a Giles to meet . . . ." *McNeill v. Bagley*, 10 F.4th 588, 598 (6th Cir. 2021). But the determination that evidence is favorable does not mean it is material. Materiality requires more. Indeed, the requirement of materiality is simply another way of stating the prejudice requirement. *Id.* ("Evidence is material (and so shows prejudice) if there is a 'reasonable probability . . . that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'").

Giles claims the entire prosecution against him fails because of the single sentence from the 2010 forensic interview: "This fact alone proves [the victim] offered perjured testimony." (Pet'r's Br., ECF No. 5, PageID.1435.) In his objections, he complains that the magistrate judge "presents no evidence that proves beyond doubt that there is no 'reasonable probability' that a fairminded jurist would choose . . . to believe Thomas' statements in her 2010 Forensic Interview over her 2015 trial testimony . . . ." (Pet'r's Obj., ECF No. 9, PageID.1555.) Giles continues to view the forensic interview statement in isolation. He disregards the other evidence that affirms the victim's trial testimony, including the undisputed fact that Giles sexually assaulted the victim and impregnated her shortly after the forensic interview, the victim's brother's testimony that Giles admitted that he had slept with the victim, and the report that the victim had previously told one of her brothers about Giles' sexual assault. And, importantly, Giles ignores the evidence that undercuts the significance of the forensic interview statement, including the fact, as noted by the magistrate judge, that the victim was not specifically asked about sexual assaults, the fact that it

was the victim's purpose to get out of the protective placement that had been ordered before the forensic interview, and the fact that the victim has testified that Giles specifically taught her and her brothers to lie when questioned by authorities. (Victim's Dec. 4, 2015, Dep., ECF No. 1-1, PageID.109.) The magistrate judge's determination that one sentence taken from the forensic interview would not have changed the result is well-supported by the record.

Giles' next objection claims the magistrate judge is biased as demonstrated by the following statement:

> [The victim] made clear in this interview that she did not want to be placed in foster care. Toward that end, [the victim] asserted that the allegations that prompted the filing of the Request for Emergency Protective Custody were mistaken and misunderstood.

(R & R, ECF No. 6, PageID.1530.)

The crux of Giles' claim is that the victim's statements during the forensic interview were really all about how allegations of sexual abuse of the victim by Giles were lies. That may be a convenient interpretation of the interview statements for Giles' defense, but it is not the only possible interpretation and, indeed, is a particularly improbable interpretation that does not withstand scrutiny.

The victim was only specific about one incident that led to her being placed in protective custody—the fact that she could not be found in her own home. She offered a specific explanation regarding that incident: she was at her friend's house, and the events that followed in terms of her parents trying to locate her there, and her friend's family members misinforming others as to her whereabouts, are the only mistakes, misunderstandings, or lies that the victim talked about directly. (Forensic Interview, ECF No. 4-14, PageID.1207.) The victim specifically expressed that she wanted and expected to get out of any placement and return to her home. The magistrate judge's

statements, including the phrase "toward that end," do not reflect bias or prejudice, they reflect a straightforward reading of the victim's factual statements during the interview.

Giles' final objection to the magistrate judge's resolution of the *Brady* claim centers on the magistrate judge's statement, "[The victim] also stated that she loved Giles and considered him her biological father." (R & R, ECF No. 6, PageID.1531.) Giles attacks that statement as "another misstatement of fact which is confusing and prejudicial." (Pet'r's Obj., ECF No. 9, PageID.1558.) The victim stated: "I get it from my, um, my mom and my dad.  My . . . my, um, my, um, step dad, but I don't really call him my step dad because, you know, I love him a lot and he's like . . . He's like my biological father to me." (Forensic Interview, ECF No. 4-14, PageID.1202.) Essentially, Giles argues that the magistrate judge pointing out that the victim "considered [Giles] her biological father" is a prejudicial misstatement of the victim's actual representation that Giles is "like [her] biological father to [her]." Giles' objection is without merit.

## Ineffective Assistance of Counsel Claims

Giles claims that his counsel rendered ineffective assistance because counsel failed to adequately investigate and develop Giles' potential defenses. The magistrate judge conducted a sufficient examination of counsel's alleged failures to investigate—specifically referencing a February 24, 2014, interview of the victim,[2] a March 4, 2013, warrant request,[3] a July 2005 incident

---

[2] The February 24, 2014, document was not, Giles notes, an interview; rather, it was a police report that referenced a Child Advocacy Center (CAC) interview wherein the victim had denied being abused. Giles suggests—and the record certainly at least permits the suggestion—that the CAC interview was the forensic interview discussed above. The magistrate judge did not simply accept Giles's suggestion. He considered other possible interpretations of the police report. Under any interpretation, however, Giles's claim fails. In resolving Giles's objection, the Court will accept the suggestion that the CAC interview is the forensic interview.

[3] Giles also disagrees with the magistrate judge's interpretation of the warrant request. Ultimately, however, this objection also tracks back to the forensic interview. (Pet'r's Obj., ECF No. 9, PageID.1565) ("The warrant should have advanced defense counsel's investigative efforts leading him to the suppressed forensic interview . . . .").

7

involving an accusation of rape,[4] and 2003 allegations that the victim was sexually assaulted by her biological father.[5] The magistrate judge concluded that Giles had failed to demonstrate that the state court's rejection of the ineffective assistance claims was contrary to, or an unreasonable application of, clearly established federal law.

Although Giles relies on counsel's failure to adequately explore the four documents identified above, Giles focuses his objections on counsel's failure to investigate and utilize the victim's forensic interview. (Pet'r's Obj., ECF No. 9, PageID.1560) ("[T]he magistrate ignores, or overlooks, Giles' primary argument. That counsel should have investigated and discovered the evidence of [the victim's] Forensic Interview and utilized it at trial."). That is certainly the case with regard to the police report note that references the CAC interview and the warrant request. (*Id.*, PageID.1564, 1565) ("[T]his item would have alerted defense counsel to the CAC Forensic Interview where [the victim] denied being abused by Giles[,]" and "This warrant should have advanced defense counsel's investigative efforts, leading him to the suppressed Forensic Interview . . . ."). Giles' argument regarding counsel's failure to investigate those documents claims that the harm Giles suffered was counsel's failure to exploit the forensic interview.

But Giles cannot prevail on any ineffective assistance of counsel claim regarding the forensic interview for the same reason he cannot prevail on the *Brady* claim relating to the interview transcript: no prejudice followed from the absence of evidence regarding the September 2010 forensic interview. "[T]he test for prejudice under *Brady* and *Strickland* is the same." *Montgomery v. Bobby*, 654 F.3d 668, 679 n.4 (6th Cir. 2011) (quoting *Avila v. Quarterman*, 560

---

[4] Giles provides Child Protective Services report excerpts relating to the incident. (ECF No. 1-2, PageID.290–301.)

[5] A March 7, 2003, police report from the Roosevelt Park Police Department includes statements from the victim regarding her biological father's sexual abuse of her that may have included vaginal and anal penetration of the victim. (ECF No. 9-2, PageID.1589–1590.)

8

F.3d 299, 314 (5th Cir. 2009) (internal quotation marks omitted)). The Supreme Court has stated that "the appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution." *Strickland v. Washington*, 466 U.S. 688, 694, 104 S. Ct. 2052, 2068 (1984); *see also Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (noting that the standard for assessing materiality in the context of *Brady* was "later adopted as the test for prejudice in *Strickland*"). Therefore, because Giles failed to demonstrate materiality or prejudice under *Brady*, he necessarily failed to show prejudice under *Strickland*.

Giles' claim regarding the "false allegation of rape" also fails. Although Giles describes the event as a false allegation of rape, it is not at all clear that the victim reported a rape. It appears that a neighbor boy attempted to compel the victim to perform oral sex in a nearby abandoned home. The reports never suggest anything more or less than that. The reports do include Giles' statements that the victim "embellish[ed] the story . . . ." (ECF No. 1-2, PageID.301.) Giles' own vague statement that the victim's account was not reliable is hardly compelling evidence, and it certainly does not prove that the victim made a false accusation of rape.

Moreover, although Giles claims that "[c]ounsel made no effort to present this evidence to undermine [the victim's] credibility[,]" (Pet'r's Obj., ECF No. 9, PageID.1567), the record does not bear out his claim. Counsel asked the victim whether she had ever made an accusation of rape that was not true. (Trial Tr. II, ECF No. 4-7, PageID.589.) Then, later, counsel asked the victim if she knew what the word "embellish" meant. (*Id.*, PageID.592.) These questions appear to be directed toward the incident with the neighbor boy.

The problem counsel faced, however, was that the reports did not mention "rape;" they mentioned "sex," oral sex, or "CSC." (ECF No. 1-2, PageID.291-292, 300-301.) And the claim was never really investigated. Giles and the victim's mother discouraged the police from pursuing

9

the matter further because they believed the victim had embellished her story. (*Id*., PageID.301.) Counsel might have been able to explore that aspect of the report—the purported embellishment—with Giles or the victim's mother, but Giles did not testify and the mother's testimony favored Giles—she even questioned the DNA results that showed the Giles fathered the victim's baby. Under the circumstances, Giles has not supported his claim that counsel failed to investigate the "false claim of rape" or that it was professionally unreasonable for counsel to not pursue the issue further. Moreover, Giles has not convinced the Court that deeper inquiry regarding the issue would have changed the result.

The same is true for Giles' ineffective assistance claim relating to allegations that the victim's biological father had sexually abused the victim before Giles allegedly did. The victim reported that her biological father had "put his dick in her pussy." (ECF No. 9-2, PageID.1590.) Giles contends the report is significant in that it contradicts the victim's trial testimony that Giles took the victim's virginity by penile/vaginal penetration while they lived in Pennsylvania several years later.

The victim was 7-years-old at the time of the Roosevelt Park report and may have been even younger at the time of the alleged penetrations by her biological father. The victim's report was described as a report of an *attempted* penetration in a petition filed in a Muskegon County Circuit Court petition. (ECF No. 9-2, PageID.1589.) It is certainly possible that the description of a penetration by a six or seven-year-old might not be considered by the victim as "taking virginity" in the same way that penile/vaginal intercourse with a preteen or teenager would be.

It is difficult to imagine how inquiry into this report would have benefited Giles. To invite the victim to draw fine distinctions into why her father's attempt at penile/vaginal penetration when she was seven years old did not take her virginity, while her step father's penile vaginal

10

penetration when she was a preteen or teenager did, could hardly sway the jurors in Giles' favor. The magistrate judge's analysis of the issue is compelling:

> Petitioner has failed to establish that his attorney did not, in fact, review such prior to trial and decided, for reasonable strategic reasons, not to question [the victim] regarding such. Thus, Petitioner cannot establish that his attorney was deficient. Furthermore, even if the Court assumes that counsel was deficient for failing to review this material prior to trial, Petitioner cannot establish the requisite prejudice. The Court is not persuaded that [the victim] could have been impeached in any meaningful way by use of the material at issue.

(R & R, ECF No. 6, PageID.1537.)

Giles has failed to identify any flaw in the magistrate judge's analysis of his claims that trial counsel rendered ineffective assistance. Giles' objections regarding ineffective assistance of trial counsel are meritless.[6]

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Giles has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Giles' claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484; 120 S Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable

---

[6] Giles does not specifically object to the magistrate judge's determination that appellate counsel was not ineffective for failing to raise habeas grounds I or II on direct appeal. Because the court determines that habeas grounds I and II are meritless, it would not be ineffective assistance of appellate counsel to forego those issues. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

11

jurists would find the district court's assessment of the constitutional claims debatable or wrong." "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1035 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Giles' claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Giles' claims was debatable or wrong. Therefore, the Court will deny Giles a certificate of appealability. Moreover, although Giles has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Giles might raise on appeal would be frivolous.

**Accordingly, IT IS HEREBY ORDERED** that the R & R (ECF No. 6) is **APPROVED** and, as supplemented by this order, **ADOPTED** as the opinion of this Court, and Giles' objections (ECF No. 9, 10) are **OVERRULED**.

**IT IS FURTHER ORDERED** that Giles' habeas corpus petition is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

A separate judgment will issue.

Dated: October 19, 2021 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE